I must respectfully dissent from the opinion of the majority. What happened on July 15, 1997, in the waters of Lake Erie adjacent to Township Park was clearly a tragedy, but more importantly, it was a tragedy that could have been avoided.
When Joshua arrived at the beach that day, there was a lifeguard stand with a sign indicating that a lifeguard was on duty. Joshua and his friends went swimming. Eventually, the waters of Lake Erie became rough. Unbeknownst to the threesome, the Superintendent of the Township Park had a standing policy that lifeguards were to go off duty whenever the waves on Lake Erie reached two feet or higher. Additionally, the lifeguards were not instructed to warn any of the swimmers when they went off duty.
In other words, when the waters became too dangerous for the lifeguards to enter, swimmers were abandoned without their knowledge. That is what happened on July 15, 1997. Joshua and his friends were specifically instructed that a lifeguard was on duty when, in fact, after the waters became rough, the lifeguard abandoned his post in accordance with a standing policy established by the Township Park Superintendent.
Moreover, it is apparent that after Joshua's friends tracked down the lifeguard who had been on duty, and they informed him that a swimmer was missing, the lifeguard waded out in the water to his knees and stated that he was either not certified or not qualified to perform that type of rescue. Further, as the trial court specifically found, it was well known to the operators of the Township Park that a strong undertow existed in the area near the breakwall, where Joshua had been swimming. Yet there were no buoys or other markers in the water to keep swimmers away from the breakwall.
With these facts in mind, even if the recreational user statute is applicable in this case, I believe that at some point a line should be drawn beyond which the landowner is not protected. Under a constitutional analysis, there simply must be an outside limit to governmental immunity under the recreational user statute. In this case, that line has been crossed. The actions of the Township Park are so egregious that they offend the conscience.
Surely we want landowners to make their property available to recreational users without the fear of being sued for anything that happens on that property. However, the facts of this case go well beyond that. This is not the typical situation where an aggrieved party wants to hold the landowner responsible merely because a lifeguard was not successful in the rescue of a swimmer. Instead, here we have the landowner operating a beach for public use in an area which is known to contain dangerous undertows, yet without barriers to keep the public away from the undertows. We have a landowner informing swimmers that a lifeguard is on duty, yet those lifeguards are removed when waters become too rough, and they are removed without the knowledge of the swimmers. Finally, we have a lifeguard who, when called upon to help rescue a swimmer in trouble, states that he is neither certified nor qualified to attempt such a rescue.
While, under the recreational user statute, the Township Park may have had no duty to protect Joshua, or to insure his safety while swimming, once it took affirmative acts to give the appearance that certain safety measures were in place, it then had the obligation to act in a responsible manner. Here, the Township Park offered the public the illusion that this was a relatively safe place to swim when it clearly was not. The Township Park created a situation where injury or death was inevitable. Death occurred. The Township Park should be held accountable for its actions.
Accordingly, I respectfully dissent.
PRESIDING JUDGE WILLIAM M. O'NEILL